1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                        * * *

9                                          )
                                           )
10   SECURITY AND EXCHANGE                  )          2:08-CV-00437-LRH-RJJ
     COMMISSION,                            )
11                                          )
                    Plaintiff,              )          ORDER
12                                          )
     v.                                     )
13                                          )
     CMKM DIAMONDS, INC., URBAN             )
14   CASAVANT, JOHN EDWARDS, GINGER         )
     GUTIERREZ, JAMES KINNEY, ANTHONY       )
15   TOMASSO, KATHLEEN TOMASSO, 1ST         )
     GLOBAL STOCK TRANSFER LLC, HELEN       )
16   BAGLEY, NEVWEST SECURITIES             )
     CORPORATION, DARYL ANDERSON,           )
17   SERGEY RUMYANTSEV, ANTHONY             )
     SANTOS, and BRIAN DVORAK,              )
18                                          )
                    Defendants.             )
19                                          )
     _____)
20

21          This matter involves a civil enforcement action brought by the Security and Exchange

22   Commission ("Commission") against eleven individuals and three companies.  Before the court are

23   the Commission's Motion for Summary Judgment Against Defendant John Edwards (#99[1]),

24   Motion for Summary Judgment Against Defendant Daryl Anderson (#102), and Motion for

25   _____

26          [1]Refers to the court's docket entry number

1   Summary Judgment Against Defendants Kathleen and Anthony Tomasso (#112).  In its motions,

2   the Commission seeks to enforce consent decrees against Edwards, Anderson, and the Tomassos

3   by establishing the disgorgement amount, prejudgment interest, and civil penalties each defendant

4   must pay.

5   **I.      Facts[2]**

6          From January 2003 through May 2005, eleven individuals and two entities assisted

7   Defendant CMKM Diamonds, Inc. ("CMKM") in fraudulently issuing hundreds of billions of

8   shares of unrestricted CMKM stock to Edwards, Defendant Urban Casavant, the CEO and

9   chairman of CMKM, and their nominees and associates.  (Compl. (#1) at 2:17-21.)  While

10  CMKM's stock price varied between $0.0001 and $0.001, Edwards, Casavant, and their nominees

11  sold billions of shares into the public markets.  (*Id*. at 3:27-28.)  As a result, 40,000 investors lost

12  $64.2 million.  (*Id.* at 3:1, 3:23.)

13         Edwards initiated the scheme by engineering a "reverse merger"[3] between his company,

14  CMKM, and several private Canadian companies controlled by Casavant.  (*Id.* at 7:23-25.)  In

15  exchange for $2 million and 2.8 billion shares of common stock, CMKM acquired mineral claims

16  in Canada owned by Casavant's companies.  (*Id.* at 7:26-27.)  Casavant then became the chairman

17  and CEO of CMKM, while Edwards, operating under the alias "Ian McIntyre," served as the

18  ───────────────

19         [2]The following facts are taken from the Commission's Complaint (#1).  Pursuant to Edwards's,
    Anderson's, and the Tomassos' consent decrees, they have stipulated to the facts of the Complaint for the

20  purpose of ordering disgorgement, with prejudgment interest, and civil penalties.  ((#41) at 3:18-23; (#51) at
    3:18-24; (#52) at 3:18-24; (#75) at 2:24-28, 3:1-2.)

21         [3]A "reverse merger" is the acquisition of a public company by a private company.  It allows the private

22  company to bypass the usually lengthy process of going public and can be completed in weeks.  In a reverse
    merger, shareholders of a private company purchase control of a public "shell" company and merge it with the

23  private company.  The public corporation is called a "shell" since all that exists is its organizational structure.
    If the shell is an SEC-registered company, as CMKM was, the private company does not go through the

24  expensive and time-consuming review with state and federal regulators.  Since this process was completed by
    the public company before the merger, the private company goes public quickly and can begin trading stock

25  immediately.  David N. Feldman, *Reverse Mergers: Taking A Company Public Without An IPO*, 19-24 (2006);
    *see also S.E.C. v. M&A West, Inc.*, 538 F.3d 1043, 1046 (9th Cir. 2008) (explaining reverse mergers).

26

director of "post-merger matters." (*Id.* at 7:22, 8:1.)  At Edwards's and Casavant's behest, CMKM–purportedly a gold and diamond mining company–increased its number of authorized shares from 500 million to 10.5 billion and eventually to 800 billion; Edwards and Casavant then began issuing and selling shares of unrestricted stock.  (*Id.* at 2:18-19, 8:3, 9:19.)

CMKM, however, had no legitimate operations.  Its only activities were illegally issuing and falsely promoting its own stock.  (*Id.* at 3:25-26.)  This involved writing false opinion letters, issuing false press releases, populating internet message boards with false information, and operating a promotional motorbike, truck, and "funny car" racing team, which traveled throughout the country promoting the CMKM brand.  (*Id*. at 13:11-12, 13:27-28, 14:16-28, 15:1-15.)  At the races, CMKM provided investors with phony maps and fabricated videos of alleged mineral claims in North and South America.  (*Id*. at 15:7-8, 5:4-5.)  In reality, the company financed gambling debts, personal real estate investments, lavish lifestyles, and had no operations beyond Casavant's Las Vegas residence.  (*Id*. at 3:16-17, 3:25, 18:25-26.)

To carry out the scheme, Edwards received fabricated opinion letters supporting the issuance of CMKM stock from CMKM's attorney, Defendant Brian Dvorak.  (*Id*. at 7:10-15.)  Letters in hand, Edwards met with Defendant Helen Bagley of Defendant 1st Global Stock Transfer LLC, who issued unrestricted shares of CMKM stock based on Dvorak's letters.  (*Id*. at 9:21-25.)  Using stock certificates issued by Bagley, Edwards then sold nearly 260 billion shares of stock through two brokers: Anderson and Anthony and Kathleen Tomasso.  (*Id*. at 16:15, 8:22-24.)  Anderson and Edwards met weekly.  (*Id*. at 15:28.)  Anderson was Edwards's registered representative at Defendant NevWest Securities Corporation, and he handled all of Edwards's accounts and trades.  (*Id*. at 15:26-28.)  Anderson sold 259,890,832,845 shares of CMKM stock in 569 transactions for $53.3 million.  (*Id*. at 16:15-16.)  Meanwhile, with Bagley's help, Edwards contacted the Tomassos and issued 77.3 billion shares of CMKM stock to five companies owned by the Tomassos, who subsequently sold the shares for $6.5 million.  (*Id*. at 18:15-18.)  Doing so,

1   the Tomassos either deliberately or recklessly disregarded the regulations requiring stocks to be

2   registered with the Commission.  (*Id*. at 18:12-21.)

3       Despite a 10-day trading suspension and an administrative proceeding instituted by the

4   Commission to revoke the registration of CMKM's stock, fraudulent trading continued.  (*Id*. at 4:1-

5   7.)  In the end, 40,000 investors lost $64.2 million while Defendants' enriched themselves.  The

6   scheme produced $26.4 million for Edwards, $2.3 million for Anderson, and $648,500 for the

7   Tomassos.  (*Id*. at 3:1, 3, 23; 17:5; 18:21.)  Through consent decrees, Edwards, Anderson, and the

8   Tomassos admitted to violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C.

9   §§ 77e(a) and 77e(c), for the unregistered offer and sale of securities.

10  **II.    Discussion**

11      The Commission now seeks the following remedies: disgorgement of ill-gotten gains,

12  including prejudgment interest, and civil monetary penalties.  Once a district court has found

13  federal securities laws violations, it has "broad equitable power to fashion appropriate remedies."

14  *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007).  Pursuant to Defendants' consent

15  decrees, the court has enjoined Defendants against future violations of the securities laws.  *See*

16  ((#41); (#51); (#52); (#72)).  Because Edwards, Anderson, and the Tomassos stipulated to the

17  complaint's allegations for the purpose of the court's order of disgorgement and civil penalties

18  ((#41) at 3:18-23; (#51) at 3:18-24; (#52) at 3:18-24; (#72) at 2:24-28; 3:1-2), their liability is not

19  at issue.  Therefore, the court will proceed under the terms of the consent decrees and order

20  Edwards, Anderson, and the Tomassos to pay disgorgement of ill-gotten gains, prejudgement

21  interest, and civil penalties.

22      **A.  Disgorgement and Prejudgment Interest**

23      Edwards's, Anderson's, and the Tomassos' consent decrees require disgorgement of ill-

24  gotten gains and prejudgment interest.  The court's authority to order disgorgement of ill-gotten

25  gains and prejudgment interest is well-established.  *See S.E.C. v. First Pac. Bancorp*, 142 F.3d

26

4

1186, 1191 (9th Cir. 1998).  The purpose of disgorgement is to deprive wrongdoers of unjust

enrichment while deterring future violations of the securities laws.  *Id*. at 1191.  To determine the

appropriate disgorgement amount, the Commission need only show "a reasonable approximation

of profits causally connected to the violation."  *Id*. at 1192 n.6.  If this approximation appears

unreasonable, defendants bear the burden of proving a more reasonable figure.  *S.E.C. v. First City

Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989).

Disgorgement orders also include prejudgment interest.  *See S.E.C. v. Cross Fin. Servs.,

Inc.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995); *S.E.C. v. Lund*, 570 F. Supp. 1397, 1404 (C.D. Cal.

1983).  The purpose of ordering payment of prejudgment interest is to deny Defendants any

possible profit resulting from illegal activity.  *Cross Fin.*, 908 F. Supp. at 734; *Lund*, 570 F. Supp.

at 1404.  Prejudgment interest is calculated at the post-judgment rate specified in 28 U.S.C. § 1961.

*Western Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984).  This

removes any economic incentive to delay and ensures that "judicially-awarded interest rates are not

less than the contemporary cost of money."  *Western Pac. Fisheries*, 730 F.2d at 1289.

Because Edwards, Anderson, and the Tomassos consented to the entry of a judgment and

stipulated to the Commission's findings, they have accepted the Commission's disgorgement and

prejudgement interest calculations.  ((#41) at 3:22-23; (#51) at 3:22-24; (#52) at 3:22-24; (#75) at

3:22-24.)  Therefore, the court orders disgorgement and prejudgment interest in accordance with

the Commission's figures: (1) Edwards shall disgorge $26.4 million; (2) Anderson shall disgorge

$2.3 million; and (3) the Tomassos shall disgorge $648,500.  Further, (1) Edwards shall pay

$2,013,046.39 in prejudgment interest, (2) Anderson shall pay $175,379.04 in prejudgment

interest, and (3) the Tomassos shall pay $50,194.32 in prejudgment interest.

Because these figures only represent interest accrued between March 5, 2003, and

December 31, 2008, for Edwards and Anderson and March 5, 2003, and January 31, 2009, for the

Tomassos, the court further orders that (1) Edwards shall pay $6,848.84 per week from December

5

31, 2008, until the date of this order, (2) Anderson shall pay $596.69 per week from December 31, 2008, until the date of this order, and (3) the Tomassos shall pay $168.24 per week from January 31, 2009, until the date of this order. Therefore, Edwards shall pay an additional $170,242.59 in prejudgment interest, for a total of $2,183,288.98, Anderson shall pay an additional $14,832.00 in prejudgment interest, for a total of $190,211.04, and the Tomassos shall pay an additional $3,436.90 in prejudgment interest, for a total of $53,631.22. For Edwards and Anderson, these figures represent the additional 174 days of accrued interest that have elapsed since December 31, 2008. For the Tomassos, this figure represents the additional 143 days of accrued interest that has elapsed since January 31, 2009.

**B. Civil Penalties**

Defendants' consent decrees also warrant the imposition of civil penalties. Under the Securities Act, civil penalties are "determined by the court in light of the facts and circumstances." *See* 15 U.S.C. § 77t(d)(2)(A). Unlike disgorgement, civil penalties are not only designed to deter future violations of securities laws but are imposed to punish the individual violator. H.R.Rep. No. 101-616, 101st Cong., at 1384-1386 (1990) *quoted in S.E.C. v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996). The Securities Act assesses civil penalties according to a three-tier system. 15 U.S.C. § 77t(d). First-tier penalties are imposed for any violation of the Securities Act. 15 U.S.C. § 77t(d)(2)(A). Second-tier penalties are imposed for violations involving "fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B). Third-tier penalties are imposed for violations that (1) involve "fraud, deceit, manipulation, or reckless disregard for a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C).

Anderson is the only defendant who filed an opposition to the court's order of civil penalties. As an initial matter, the court notes that Anderson is foreclosed from arguing that civil

6

penalties are unwarranted.  Anderson's consent decree clearly states that "the Court shall order . . . a civil penalty."  (Consent J. (#75) at 2:18-20.)  Nevertheless, the court will address Anderson's arguments against the imposition of civil penalties.  First, contrary to Anderson's assertion, *S.E.C. v. Alpha Telecom*, *Inc*., 187 F. Supp. 2d 1250 (D. Or. 2002) does not excuse the imposition of civil penalties if a defendant has no prior history of securities law violations.  The *Alpha Telecom* court refrained from imposing civil penalties because (1) "[t]his is the defendant's first violation" and, more importantly, (2) the defendant's "conduct did not amount to fraud, deceit, manipulation, or the like."  *Alpha Telecom*, 187 F. Supp. 2d at 1263.  Thus, the *Alpha Telecom* court could not impose civil penalties because 15 U.S.C. § 77t(d)(2)(C)'s statutory requirements were not met.  *See* 15 U.S.C. § 77t(d)(2)(C) (requiring "fraud, deceit, manipulation, or reckless disregard for a regulatory requirement" for the imposition of civil penalties); *S.E.C. v. Ross* is inapplicable to the present case for the same reason.  *See* 504 F.3d 1130, 1134 (9th Cir. 2007)

Anderson's second contention that a nominal penalty is proper despite numerous violations is also unpersuasive.  Citing *S.E.C. v. Aqua Vie Beverage Corp*, No. CV 04-414-S-EJL, 2008 WL 1914723 (D. Idaho, April 29, 2008) and *S.E.C. v. Pourier*, 140 F. Supp. 2d 1033 (D. Ariz. 2001), Anderson misconstrues precedent.  In *Pourier*, the court's language implies that one penalty was imposed because the Commission requested one penalty.  *See Pourier*, 140 F. Supp. 2d at 1049 (Granting "Plaintiff's motion with regard to civil penalties and impos[ing] upon each Defendant a $100,000 penalty.").  With respect to *Aqua Vie*, while Anderson correctly asserts that the *Aqua Vie* court imposed only one penalty despite defendants' repeated violations, his argument is nevertheless unconvincing.  First, the *Aqua Vie* opinion did not provide enough analysis to determine why only one penalty of $100,000 was imposed.  *See Aqua Vie*  2008 WL 1914723 at *3. Second, and more importantly, the scope of the scheme involved in *Aqua Vie* shrinks in comparison to the breadth of the CMKM scheme.  While the defendants in *Aqua Vie* faxed "millions of one-page tout sheets to homes and businesses, in violation of Section 17(a) of the Securities Act," *Aqua*

7

*Vie*, 2008 WL 1914723 at \*3, Anderson sold billions of shares of CMKM stock.  Moreover, while it is unclear from the *Aqua Vie* opinion whether the defendants profited from their scheme, Anderson's activity grossed $2.3 million.

Turning to the amount of civil penalties appropriate under the present circumstances, the court may order third-tier penalties if two statutory requirements are met: (1) "fraud, deceit, manipulation, or reckless disregard for a regulatory requirement" that (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. § 77t(d)(2)(C).  In regard to the first requirement, Edwards's, Anderson's, and the Tomassos' business practices were fraudulent, deceitful, and manipulative.  Together, they fraudulently traded 259 billion shares of stock, conducted nearly 260 billion fraudulent transactions, manipulated CMKM's stock, and deceived the public.  Concerning the second requirement, Edwards's, Anderson's, and the Tomassos' conduct caused substantial losses.  Together, they defrauded 40,000 investors of $64.2 million.  Third-tier civil penalties are therefore warranted.

Courts have calculated third-tier civil penalties in two ways.  First, a court may multiply a defendant's violations by a dollar amount.  *See S.E.C. v. Coates*, 137 F. Supp. 2d 413, 430 (S.D.N.Y. 2001); *see also* 15 U.S.C. § 77t(d)(2).  Second, a court may impose a flat penalty equal to a defendant's gross pecuniary gain.  *See S.E.C. v. Solow*, 554 F. Supp. 2d 1356, 1368 (S.D. Fla. 2008); *Haligiannis*, 470 F. Supp. 2d 373 at 386.  Additionally, courts routinely consider five factors, established in *S.E.C. v. Murphy*, 626 F.2d 633 (9th Cir. 1980), when calculating civil penalties: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations.  *See, e.g.*, *Alpha Telecom*, 187 F. Supp. 2d at 1263 (applying the factors to assess a civil penalty).

To compute Defendants' penalties, the Commission asks the court to follow the method employed by *Coates* and *S.E.C. v. Kenton Capital*, 69 F. Supp. 2d 1 (D.D.C. 1998).  In *Coates*, the court imposed four $10,000 penalties for each of four misrepresentations a defendant made. *Coates*, 137 F. Supp.2d. at 430, 428.  In a similar vein, the *Kenton Capital* court imposed twelve $100,000 penalties for each of the twelve investors a defendant defrauded.  *Kenton Capital*, 69 F. Supp.2d at 17.  Accordingly, the Commission would have the court impose 569 penalties for each of the 569 fraudulent transactions Edwards and Anderson conducted and five penalties for each of the five companies the Tomassos operated.  Alternatively, the Commission would have the court impose 40,000 penalties for each of the 40,000 investors Edwards, Anderson, and the Tomassos defrauded.

The Commission's recommendations are unhelpful.  First, the Commission's suggested number of violations would result in excessive penalties.  Following *Coates* would impose $10,000 civil penalties for each of the 569 fraudulent transactions and thus penalize Edwards and Anderson $5,690,000.  This calculation is both unjust and inequitable: it not only exceeds the total amount Anderson fraudulently obtained but would penalize Edwards and Anderson equally despite varied levels of involvement and unjust enrichment.  Similarly, following *Kenton Capital* would excessively burden Defendants with $100,000 penalties for each of the 40,000 investors defrauded. Second, neither *Coates*, *Kenton Capital*, nor the Commission provided a rationale for determining why one set of violations should be used to calculate penalties and another should not.  As a result, it is very difficult to determine the exact number of violations each defendant committed. Therefore, the court will not follow *Coates* and *Kenton Capital*'s method of multiplying a defendant's violations by a dollar amount.

The court will instead employ the second method for calculating third-tier civil penalties and impose a single fine on each defendant.  When faced with a similar array of violations, courts often order penalties based on a defendant's gross pecuniary gain.  *See Haligiannis*, 470 F. Supp.

9

2d at 386 (ordering a $15,000,000 penalty equal to the disgorgement amount "due to difficulty calculating total number of violations"); *S.E.C. v. Interlink Data Network, Inc.*, *et. al.*, No. 93-3073 R, 1993 WL 603274, *13 (C.D. Cal. Nov. 15, 1993) (ordering a $12,285,035 penalty equal to the disgorgement amount for 565, 439, and 527 violations because "there are many ways to compute the amount of a civil penalty under the federal securities law"); *S.E.C. v. Invest Better 2001*, No. 11427 2005, WL 2385452, *5 (S.D.N.Y. May 4, 2005) (ordering civil penalty equal to disgorgement amount because "the exact number of violations . . . is impossible to determine"); *S.E.C. v. Yuen*, 272 Fed. App'x 615, 618 (9th Cir. 2008) (affirming a district court's penalty equal to the disgorgement amount as "well within [the district court's] discretion").

Given the gravity of their actions, the extent of their fraud, and the magnitude of their unjust enrichment, penalties equal to each defendant's gross pecuniary gain is warranted.  The *Murphy* factors confirm the propriety of this calculation.  Regarding the first factor, Edwards's, Anderson's, and the Tomassos' degree of scienter was considerably high.  They are sophisticated businesspeople and their scheme was expansive, complicated, and well-calculated.  Edwards engineered a "reverse merger," which bypassed a review with state and federal regulators. Anderson traded billions of shares of stock, despite clear signs that the stock was improperly issued.  Further, the Tomassos' operated five companies, which sold shares of the fraudulent stock and perpetuated the scheme.  Doing so, the Tomassos either deliberately or recklessly disregarded the regulations requiring stocks to be registered with the Commission.

Concerning the second factor, Edwards's, Anderson's, and the Tomassos' violations were not isolated but recurrent.  From January 2003 through May 2005, Edwards, Anderson, and the Tomassos sold billions of shares of fraudulent stock, repeatedly violated several securities laws, and continually defrauded investors.  Moreover, despite a 10-day trading suspension and an administrative proceeding instituted by the Commission to revoke the registration of CMKM's stock, Edwards, Anderson, and the Tomassos continued to fraudulently issue and trade stock.

1        As to the third factor, aside from entering consent decrees, Edwards, Anderson, and the

2   Tomassos have done nothing to recognize the wrongful nature of their conduct.

3        With respect to the fourth factor, although injunctions have been entered against Edwards,

4   Anderson, and the Tomassos, given their repeated disregard of securities regulations and the

5   sophisticated nature of their scheme, it is foreseeable that future violations could occur.

6        Finally, regarding the fifth factor, neither Edwards, Anderson, nor the Tomassos have

7   assured the court against future violations.

8        Accordingly, in addition to ordering disgorgement of ill-gotten gains and prejudgment

9   interest, the court imposes one third-tier penalty equal to the Defendant's respective disgorgement

10   amounts.  Because these penalties are imposed as punishment and not as compensation for actual

11   pecuniary loss, they are nondischargeable at bankruptcy.

12        IT IS THEREFORE ORDERED that the Commission's Motions for Summary Judgment

13   (#99), (#102), and (#112) are GRANTED.

14   I.

15        IT IS FURTHER ORDERED that Defendant John Edwards is liable for disgorgement of

16   $26,400,000, representing profits gained as a result of the conduct alleged in the Complaint,

17   together with prejudgment interest thereon in the amount of $2,183,288.98, and a civil penalty in

18   the amount of $26,400,000 pursuant to Section 20(d) of the Securities Act of 1933, 15 U.S.C. §

19   77t(d). Edwards shall satisfy this obligation by paying $54,983,288.98 within ten business days to

20   the Clerk of this Court, together with a cover letter identifying Edwards as a defendant in this

21   action; setting forth the title and civil action number of this action and the name of this Court; and

22   specifying that payment is made pursuant to this Final Judgment.  Edwards shall simultaneously

23   transmit photocopies of such payment and letter to the Commission's counsel in this action.  By

24   making this payment, Edwards relinquishes all legal and equitable right, title, and interest in such

25   funds, and no part of the funds shall be returned to Edwards.  Edwards shall pay post-judgment

26

interest on any delinquent amounts pursuant to 28 U.S.C. § 1961. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS") or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Edwards shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Edwards' payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Edwards' payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Edwards shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Edwards by or on behalf of one or more investors based on substantially the same facts as alleged

1  in the Complaint in this action.

2         IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for the

3  purposes of enforcing the terms of this Final Judgment.

4         There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

5  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

6                                              II.

7         IT IS FURTHER ORDERED that Defendant Daryl Anderson is liable for disgorgement of

8  $2,300,000, representing profits gained as a result of the conduct alleged in the Complaint, together

9  with prejudgment interest thereon in the amount of $190,211.04, and a civil penalty in the amount

10 of $2,300,000 pursuant to Section 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d).

11 Anderson shall satisfy this obligation by paying $4,790,211.04 within ten business days to the

12 Clerk of this Court, together with a cover letter identifying Anderson as a defendant in this action;

13 setting forth the title and civil action number of this action and the name of this Court; and

14 specifying that payment is made pursuant to this Final Judgment.  Anderson shall simultaneously

15 transmit photocopies of such payment and letter to the Commission's counsel in this action.  By

16 making this payment, Anderson relinquishes all legal and equitable right, title, and interest in such

17 funds, and no part of the funds shall be returned to Anderson.  Anderson shall pay post-judgment

18 interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.  The Clerk shall deposit the funds

19 into an interest bearing account with the Court Registry Investment System ("CRIS") or any other

20 type of interest bearing account that is utilized by the Court.  These funds, together with any

21 interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing

22 account until further order of the Court.  In accordance with 28 U.S.C. § 1914 and the guidelines

23 set by the Director of the Administrative Office of the United States Courts, the Clerk is directed,

24 without further order of this Court, to deduct from the income earned on the money in the Fund a

25 fee equal to ten percent of the income earned on the Fund.  Such fee shall not exceed that

26

authorized by the Judicial Conference of the United States.  The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval.  Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Anderson shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Anderson's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Anderson's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Anderson shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment.   For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Anderson by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

III.

IT IS FURTHER ORDERED that Defendants Kathleen Tomasso and Anthony Tomasso ("the Tomassos") are jointly and severally liable for disgorgement of $648,500, representing profits

gained as a result of the conduct alleged in the Complaint, together with prejudgment interest

thereon in the amount of $53,631.22, and a civil penalty in the amount of $648,500 pursuant to

Section 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d). The Tomassos shall satisfy this

obligation by paying $1,350,631.22 within ten business days to the Clerk of this Court, together

with a cover letter identifying Kathleen Tomasso and Anthony Tomasso as defendants in this

action; setting forth the title and civil action number of this action and the name of this Court; and

specifying that payment is made pursuant to this Final Judgment. The Tomassos shall

simultaneously transmit photocopies of such payment and letter to the Commission's counsel in

this action.  By making this payment, the Tomassos relinquish all legal and equitable right, title,

and interest in such funds, and no part of the funds shall be returned to the Tomassos.  The

Tomassos shall pay postjudgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Clerk shall deposit the funds into an interest-bearing account with the Court Registry

Investment System ("CRIS") or any other type of interest bearing account that is utilized by the

Court.  These funds, together with any interest and income earned thereon (collectively, the

"Fund"), shall be held in the interest-bearing account until further order of the Court.  In

accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative

Office of the United States Courts, the Clerk is directed, without further order of this Court, to

deduct from the income earned on the money in the Fund a fee equal to ten percent of the income

earned on the Fund.  Such fee shall not exceed that authorized by the Judicial Conference of the

United States.  The Commission may by motion propose a plan to distribute the Fund subject to the

Court's approval.  Such a plan may provide that the Fund shall be distributed pursuant to the Fair

Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  Regardless of whether any

such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this

Judgment shall be treated as penalties paid to the government for all purposes, including all tax

purposes.  To preserve the deterrent effect of the civil penalty, the Tomassos shall not, after offset

1   or reduction of any award of compensatory damages in any Related Investor Action based on

2   Defendants' payment of disgorgement in this action, argue that they are entitled to, nor shall they

3   further benefit by, offset or reduction of such compensatory damages award by the amount of any

4   part of the Tomassos' payment of a civil penalty in this action ("Penalty Offset").  If the court in

5   any Related Investor Action grants such a Penalty Offset, the Tomassos shall, within 30 days after

6   entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action

7   and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the

8   Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not

9   be deemed to change the amount of the civil penalty imposed in this Judgment.  For purposes of

10  this paragraph, a "Related Investor Action" means a private damages action brought against the

11  Tomassos by or on behalf of one or more investors based on substantially the same facts as alleged

12  in the Complaint in this action.

13          IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for the

14  purposes of enforcing the terms of this Final Judgment.

15          There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

16  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

17  /// /// ///

18  /// /// ///

19  /// /// ///

20  /// /// ///

21  /// /// ///

22  /// /// ///

23  /// /// ///

24  /// /// ///

25  /// /// ///

26

IV.

IT IS FURTHER ORDERED that the Commission shall provide the court with a status report every 90 days from the date of this order concerning Defendants' satisfaction of the court's judgment.  Following the fourth status update on June 18, 2010, the Commission shall provide further status updates as provided by this court in a future order.

IT IS SO ORDERED.

DATED this 23rd day of June 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

17