JOHN WESLEY HALL, JR.
   Nev. Bar No. 05012
   Ark. Bar No. 73047
1202 Main Street; Suite 210
Little Rock, Arkansas 72202-5057
501-371-9131
fax 501-378-0888
e-mail:  ForHall@aol.com

Attorney for Defendant Brian Dvorak

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 2:08CV00437-LRH-RJJ |
| Plaintiff, | |
| v. | **MOTION FOR STAY OF THIS CIVIL PROCEEDING AND MEMORANDUM IN SUPPORT** |
| CMKM DIAMONDS, INC., *et al.,* | |
| Defendants. | |

Defendant Brian Dvorak moves to stay this case as to him because of the pendency of a federal criminal indictment in this court over the same facts, including a stay of having to respond to the SEC's Motion for Summary Judgment (Doc. 161).

### I. Facts

1.      The Securities and Exchange Commission filed this case in the District of

Nevada asserting claims against all these defendants in April 2008, for: (1) Issuance and Sale of Stock in an Unregistered Distribution, (2) Fraud in the Issuance of Unlegened Stock Certificates Shares of Purportedly Unrestricted Stock, (3) Fraudulently Inducing Investors to buy CMKM Stock, and (4) Violation of the Broker-Dealer registration Provisions, pursuant to the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa. (Complaint, Doc. 1)

2.      Before the civil case and the indictment, Dvorak cooperated with the SEC and the U.S. Attorney in the futile hope that they would decide he was a better witness rather than a defendant. This has gone on what seems like four years. That obviously did not work. Having taken his statement and deposition when he was indicted but didn't know it, they want him to be both a defendant and a witness against himself.

3.      Anyway, a year later, on March 25, 2009, an Indictment was issued in the United States District Court for the District of Nevada over the same facts: 02:09-CR-132-RLH-RJJ (Crim. Doc. 1)  There were six defendants in that indictment: Edwards, Casavant, Gutierrez, Kinney, Bagley, and Dvorak.

4.      However, the indictment was not unsealed until October 2009, and that's the first Dvorak knew he was indicted. (Crim. Doc. 50)

5.      Indeed, Dvorak was deposed by the SEC in Denver in July 2009, probably knowing that Dvorak was the subject of a sealed indictment at the time. If Dvorak had

2

known, he could have moved to stay the deposition pleading the Fifth Amendment. As to Dvorak, however, this case immediately went into hibernation until the SEC filed its motion for summary judgment on the eve of the original trial date for the criminal case, which was early February 2011.[1]

6.     The government obtained a Second Superseding Indictment on March 24, 2010 adding four defendants and charging Dvorak and co-defendants Jeffrey Turino, John M. Edwards, Urban Cassavant, Nickolaj Vissokovsky, Melissa Spooner, Helen Bagley, Jeffrey Mitchell, Ginger Guiterrez, James Kinney, with: Conspiracy to Sell Unregistered Securities, and to Commit Securities Fraud in Violation of Title 15; Fraudulent Interstate Securities Transactions; Securities Fraud and Insider Trading; Securities Fraud; Conspiracy to Commit Securities Fraud in Violation of 18 U.S.C. § 1347; Conspiracy to Commit Money Laundering under 18 U.S.C. §§ 1956 & 1957; Conspiracy to Conduct or Participate in an Enterprise Engaged in a Pattern of Racketeering Activity; and Tax Evasion. (Crim. Doc. 63)

7.     The case was set for trial for February 7, 2011.

8.     On January 6, 2011, a status hearing was held in the criminal case, and it was continued to October-December 2011 because of its complexity, lack of full discovery, and unarraigned defendants not yet in the country. It is set for trial before Judge Hunt, and the following minute order was distributed by CM/ECF on January 7, 2011:

---

[1] This would lend further credence to the theory that it was important to depose Dvorak before he found out he was already indicted.

3

MINUTES OF PROCEEDINGS - Motion Hearing as to John M. Edwards, Urban Casavant, Helen Bagley, Brian Dvorak, Ginger Gutierrez, James Kinney, Jeffrey Turino, Nickolaj Vissokovsky, Melissa Spooner, Jeffrey Mitchell held on 1/6/2011 before Chief Judge Roger L. Hunt. Crtrm Administrator: Kandy Capozzi; AUSA: Michael Chu; Def Counsel: Chris Rasmussen (appearing also for David Brown and John Hall); Mark Dzarnoski; Jacqueline Naylor; Court Reporter/FTR #: Heather Newman; Time of Hearing: 10:00 AM; Courtroom: 6C; (Defendants are not present.) Mr. Chu advises that of the ten co-defendants, five are overseas and one remains a fugitive. A discussion is held regarding a new trial date and estimated trial length. It is estimated three-to-four months may be required for trial. ACCORDINGLY, IT IS HEREBY ORDERED Motion to Continue Trial [120] is granted. This case has been designated as complex. Therefore, due to the complexity of the matter and to accord the parties a reasonable time to prepare for trial, Jury Trial is continued pursuant to 18 USC Section 3161(h)(8)(B) to 10/17/2011 08:30 AM in LV Courtroom 6C before Chief Judge Roger L. Hunt. Calendar Call is continued to 10/12/2011 08:45 AM in LV Courtroom 6C before Chief Judge Roger L. Hunt. The Court informs counsel that extensions requested due to conflicts in their schedules will not be considered.(no image attached)

9.    At the January 6th hearing, the U.S. Attorney's Office told counsel that the SEC in Los Angeles, the branch that filed this case, has potentially 200 boxes of discovery relative to the criminal case. Thus, it is obvious the SEC is working hand in glove with the U.S. Attorney's Office in the prosecution of the criminal case.

10.    Indeed, when comparing the complaint (Civil Doc. 1) and the Second Superseding Indictment (Crim. Doc. 63), the matters and issues involved in the criminal prosecution are virtually identical to the claims and allegations in the SEC's civil case.

11.    Dvorak anticipates in providing a defense in the pending matter regarding his individual liability the need to call witnesses to testify as to Dvorak's participation, knowledge, duties and responsibilities in CMKM Diamonds, Inc. (*i.e.* non-sales related activities). It will be necessary for him to call witnesses who may take the Fifth themselves, and

4

that will potentially require a severance for him. Two witnesses he needs to defend the civil case and potentially exonerate him in the criminal case are fighting extradition at their own peril because they may get back really close to the criminal trial date.

12.    Due to the pending criminal prosecution, well-settled case law establishes that defendants named in the criminal indictment have an undeniable and clearly recognized right to invoke their protections against self-incrimination, which extends to any proceedings, civil or criminal, formal or informal. *See Malloy v. Hogan,* 378 U.S. 1 (1964); *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973).

13.    Based upon the striking similarity of the allegations contained in the indictment and those raised in the Complaint in this case, Dvorak believes that critical testimony of the other defendants would not be available to him in the defense of the civil matter in that said testimony suggests a waiver of each defendant's Fifth Amendment rights would be needed.

14.    Because of the criminal prosecution against all these defendants and the jeopardy resulting therefrom, it is a reasonable assumption and anticipation that most or all of the named defendants in the criminal matter will potentially invoking their Fifth Amendment privilege against self-incrimination.

15.    It is in the interest of fairness and judicial economy to stay these proceedings pending the final resolution of the criminal proceedings. It is even in the public interest at this point to grant a stay of the civil case since the SEC has taken its time to allow the U.S. Attorney to catch up and use its work product to prosecute this defendant and others.

16.     This motion is not made merely for the purpose of delay, but is a serious attempt to promote an efficient and inexpensive resolution to both this action and the criminal case. If, for example, Dvorak were convicted in the criminal case, that would potentially be collateral estoppel in this case. So, the Motion for Summary Judgment would have no defense. However, if Dvorak is acquitted, the civil case against him should logically just go away.

17.     Because human liberty is at stake in the criminal case, it should take precedence, and defendant should not have to expend time defending the civil case when he should be working on the criminal case.

18.     If the court denies this motion to stay, then defendant seeks additional time in which to respond to the motion for summary judgment. Two defendants in this final SEC Motion for Summary Judgment, Doc. 161, have filed responses (Rumyantsev, Doc. 163-65; Bagley, Doc. 166-70).

## II. Argument

### A. Introduction

This Court currently has two cases involving Dvorak pending before it. This SEC civil enforcement case (2:08-CV-437-LRH-RJJ) and the securities fraud criminal case (2:09-CR-132-RLH-RJJ). Both are complex multi-defendant cases regarding allegations of an unlawful scheme to improperly issue and sell unregistered stock of CMKM Diamonds, Inc., a purported diamond and gold mining company. The criminal trial could take four months.

Essentially, the civil and criminal actions allege that several of the same defendants participated in a fraudulent scheme intended to enrich themselves and other agents and employees of CMKM Diamonds, Inc., by convincing investors through false statements and omissions of material facts. Dvorak is accused of Dvorak signing opinion letters used to avoid SEC requirements.

In the pending criminal case, Dvorak and co-defendants Jeffrey Turino, John M. Edwards, Urban Cassavant, Nickolaj Vissokovsky, Melissa Spooner, Helen Bagley, Jeffrey Mitchell, Ginger Guiterrez, and James Kinney are facing counts arising out of the similar conduct alleged in this case. The same witnesses and proof are expected to be presented in both cases.

But, there is more: The SEC has control over a significant part of the discovery in this case. We were informed by the U.S. Attorney on January 6, 2011 that there are about 200 file boxes of material not previously disclosed in the possession of the SEC in Los Angeles, the branch of the SEC that filed this case.

In addition, Dvorak particularly needs the testimony of witnesses Urban Cassavant, John M. Edwards, and Helen Bagley to establish what his role and duties were regarding the allegation of the civil complaint against him individually. Cassavant and Edwards are resisting extradition and have not been arraigned.[2] He expects them to be exculpatory. Yet, Cassavant and Edwards chose not to participate in the civil action, and the SEC already has

---

[2] They do so at their own peril because the criminal case is not being continued again.

judgment against them.

Not being able to question them in the civil action while the pending matter is proceeding would prevent Dvorak from asserting appropriate defenses and from forming a complete defense in this, with great potential to interfere with the criminal action at the same time.

**B. U.S. District Courts Have Discretion to Stay Civil Proceedings During the Pendency of a Parallel Criminal Action**

U.S. District Courts have the discretionary authority to stay a civil action pending the resolution of a parallel criminal proceeding. *United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1972); *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1088 (5th Cir. 1979); *Volmar Distributors, Inc. v. N.Y. Post Co.,* 152 F.R.D. 36, 39 (S.D. N.Y. 1993) (staying civil action until resolution of parallel criminal proceedings to "avoid duplication of effort and unnecessary litigation costs" and because "the outcome of the criminal case may encourage settlement" of the civil case).[3]

A court may decide in its discretion to stay civil proceedings "when the interests of justice seem to require such an action." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995). *Id.* at 324-25:

> The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." [*Federal Sav. and Loan Ins.*

---

[3] *See generally* Annot., *Pendency of Criminal Prosecution as Ground for Continuance or Postponement of Civil Action to Which Government Is Party Involving Facts or Transactions upon which Prosecution Is Predicated–Federal Cases,* 33 A.L.R. Fed. 2d 111 (2008).

8

*Corp. v.*] *Molinaro,* 889 F.2d [899,] at 902 [(9th Cir. 1989)]. This means the decisionmaker should consider "the extent to which the defendant's fifth amendment rights are implicated." *Id.* In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id.* at 903.

*See also State Farm Lloyds v. Wood,* 2006 WL 3691115, *1 (S.D. Tex. 2006); *Librado v. M.S. Carriers, Inc.,* 2002 WL 31495988 *2-3 (N.D. Tex. 2002) (stay granted through sentencing).

In this case, these factors weigh in favor of a stay of the civil proceedings as to Dvorak. In addressing a motion to stay civil proceedings, the court in *Librado* weighed all the above factors. In doing so, the district court recognized that "a district court may stay a civil proceeding during the pendency of a parallel criminal proceedings. Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *ld.* at *2.

Where defendants are facing criminal prosecution for substantially similar conduct and the two cases concern the same subject matter, the criminal investigation could be severely prejudiced by discovery in the civil case, and the civil discovery could be streamlined if the criminal case is moved forward first. *Ashworth v. Albers Medical, Inc.* 229 F.R.D. 527, 530-31, 33 A.L.R. Fed. 2d 681 (S.D. W. Va. 2005).

Here, the indictment and civil complaint stem from the same conduct. The civil case

was pending for two years and was apparently at least partially the vehicle by which the government helped gather evidence for the indictment, even going so far as the SEC taking Dvorak's deposition while he was, unbeknownst to him, under indictment. The SEC will, of course, will claim no knowledge of the date of the indictment, but a hearing might just reveal that they did in fact know, particularly when the U.S. Attorney says that the SEC in Los Angeles has 200 box of criminal case discovery and the trial needs to be pushed back nine months to be able for defendants to prepare for trial.

Dvorak's part of both the civil and criminal cases arise from defendant Dvorak's alleged involvement in the CMKM Diamonds Inc. stock scheme. Dvorak has always contended he was just unwittingly being used by Cassavant and others. The defense to the criminal case and the civil case are similar. But, when the government chose to indict him for that same conduct, the stakes escalated considerably. Instead of going from a case where a civil sanction could be imposed and then mitigated for failure to pay, the government now wants to imprison him. The Fifth and Sixth Amendments came into play.

### C. Defendant's Fifth Amendment Rights are Implicated Because the Issues in the Civil and Criminal Cases Substantially Overlap

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay. "The strongest case for deferring civil proceedings is where a party under indictment for a serious offense is required to defend a civil action [or testify in and action] involving the same matter]." *State Farm Lloyds,* 2006 WL 2691115 at *2, citing *Javier H. v. Garcia-Botello,* 218 F.R.D. 72, 75 (W.D. N.Y. 2003); *see also Securities and Exchange Commission v. Dresser Indus-*

10

*tries, Inc.,* 202 U.S. App. D.C. 345, 628 F.2d 1368, 1375-76 (1980).

The SEC's civil complaint contains matters and issues that substantially overlap and directly relate to the claims and allegations involved in the Criminal Complaint against the civil Defendants. (Crim. Doc. 63, Second Superseding Indictment) The claims and allegations made in this civil action stem from the alleged sale of unregistered securities; demonstrating a sufficiently close nexus between the civil and criminal cases. The claims in the two cases are virtually identical and rely on the same proof.

There can be no dispute that the anticipated witnesses' and defendant's Fifth Amendment rights are implicated based on the factual and legal similarities contained in the Indictment when compared with those raised in this action. The virtual complete overlap of factual issues between the criminal action and the civil case weighs in favor of a stay. Is the SEC trying to help convict defendant too? Of course they are. Are they trying to interfere with trial preparation in the criminal case? Yes they certainly are because they filed this Motion for Summary Judgment (Civil Doc. 161) on December 23, 2010 when the criminal case was still set for trial on February 7, 2011. They wanted to distract us from dealing with the criminal case to answer their Motion for Summary Judgment.

"In determining whether to grant a stay, a court must also consider the status of the related criminal proceedings, which can have a substantial effect on the balancing of the equities." *State Farm Lloyds,* 2006 WL 3691115 at *2 citing *In re Adelphia Communications Securities Litigation,* 2003 WL 22358819 at *4 (E.D. Pa. May 13,2003). The threat of a criminal case is past. The criminal case is set for trial for at least three months starting in

1    October.

2       Significantly, civil proceedings, if not deferred, *will* undermine an anticipated wit-

3    nesses' rights, including the privilege against self-incrimination under the Fifth Amend-

4
5    ment. *See Javier,* 218 F.R.D. at 75:

6           "[T]he strongest case for deferring civil proceedings until after com-
7           pletion of criminal proceedings is where a party under indictment for a seri-
            ous offense is required to defend a civil action involving the same matter."
8           *Dresser,* 628 F.2d at 1376; see also *LaBianca,* 801 F.Supp. at 1011
9           ("[C]ourts are more likely to grant [civil discovery] stays when an indictment
            has already been issued"); *In re Par Pharm., Inc. Sec. Litig.,* 133 F.R.D. 12,
10          13-14 (S.D.N.Y. 1990) ("[C]ourts will stay a civil proceeding when the
11          criminal investigation has ripened into an indictment."). If a grand jury in-
            dicts a party for conduct that is the subject of a civil action, as they have in
12          the instant matter, the court is obligated to prevent that criminal defendant
13          from "using parallel civil proceedings to gain premature access to evidence
            and information pertinent to the criminal case." *S.E.C. v. Doody,* 186
14          F.Supp.2d 379, 381 (S.D.N.Y. 2002).

15   See also *Heller Healthcare Finance, Inc. v. Boyes,* 2002 WL 1558337, *3 (N.D. Tex. July
16
17   15, 2002), citing *Trustees of Plumbers and Pipe fitters Nat'l Pension Fund v. Transworld*
18   *Mech., Inc.,* 886 F.Supp. 1134, 1139 (S.D. N.Y. 1995).

19      Before the civil case was filed, Dvorak cooperated with the SEC and gave two
20   statements under oath with the hope that he would not be sued. That did not happen. After
21
22   he was sued, the SEC wanted his deposition, and they came to Denver[4] to take his video
23   deposition in July 2009, after the indictment but before the government chose to tell
24   Dvorak about it. It was just like the government decided to unseal the indictment after they
25
26   could get Dvorak to make another statement under oath that they could not get from him if

27   ───────────────
28      [4] He lives in Boulder, Colorado.

                                    12

he knew he had been indicted.

### D. The Risk of Prejudice From Staying the Civil Case
### Does Not Weigh Against Granting the Stay

Normally, "[i]n evaluating the plaintiff's burden resulting from the stay, the courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *State Farm Lloyds,* 2006 WL 3691115 at *2 citing *Adelphia,* 2003 WL 22358819 at *4.

A stay will not cause any harm or prejudice to the SEC for several reasons:

First, the civil case is nearly three years old, and it still is not even set for trial. Second, the SEC has about $100,000,000 in judgments against all but three of the defendants. Third, a stay in the proceedings to allow for the proper disposition of the criminal case will not hamper the SEC in obtaining their remedy against Dvorak, if warranted. They have judgments against most of the others, and a much smaller, uncollectible[5] judgment,

Due to the criminal proceedings and charges against anticipated witnesses, counsel for the anticipated witnesses will undoubtedly require them to invoke the protections provided by the Fifth Amendment to the United States Constitution so as to avoid any infringement of his rights in the criminal action. Dvorak can plead the Fifth to answering the Motion for Summary Judgment so conveniently filed to coincide with what would have

---

[5] Dvorak's counsel in the civil case is uncompensated because Dvorak is broke. He can't pay any judgment levied against him, but he's not going to even settle without an admission of fault and then seek mitigation of the penalty for inability to pay.

The USMJ appointed the same counsel under the CJA for the criminal case. Dvorak is not the only defendant in the criminal case with out-of-state CJA counsel.

13

been eve of trial preparation in the criminal case, but it was later continued to October.

Fifth Amendment rights are paramount to plaintiff's interests in the expeditious resolution of their cases, therefore justifying a stay during the pendency of a related criminal action. In other case, the government itself has requested a stay contending that a stay would streamline discovery in the civil case because evidence obtained in the criminal case would be available to the civil parties. See *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F. Supp. 2d 6 (D. Conn. 2002).

Staying the civil case is justified by due process concerns as well as concerns for justice and fairness because it prevents exposure of the defense's theory to the prosecution in advance of trial and safeguards against prejudicing Dvorak in the parallel criminal case. Facts between the two cases are identical with the SEC holding much of the discovery, and the risks to, and public need for, the fair resolution of the criminal case outweigh the benefits of expedition in the civil case. With 200 boxes of discovery waiting to be scanned and delivered to defense counsel in the criminal case, there may be more Dvorak will be able to present to defeat summary judgment.

**D. A Stay Would Assist the Court in More Efficiently Managing Its Docket**

The criminal case is going to be tried, and it will be tried for months. It only makes sense that that case have precedence on this court's docket, and defendant be permitted to make his defense there. This case is not set for trial. On this summary judgment motion, the other defendants chose to answer. This defendant chooses to assert that the civil case be stayed as to him so he is not whipsawed between two actions trying the same case, one with

14

monetary and injunctive penalties and one with imprisonment, fines, and restitution loom-ing.

Staying the case makes efficient use of judicial resources by "insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." *Javier H.,* 218 F.R.D. at *75.

All courts have an interest in efficiently managing their dockets. *State Farm Lloyds,* 2006 WL 3691115 at *3 citing *Adelphia,* 2003 WL 22358819 at *5. Staying this case would promote judicial efficiency. If the civil action is stayed until the conclusion of the criminal proceedings, just another year or so when the civil action has been either in the works or pending for about five years, where there is no need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case. *Id.* Indeed, should this case proceed without a stay, a number of issues would arise pertaining to the discoverability of testimony, various documents and other evidence that would likely require the Court's intervention.

The Fifth Amendment privilege against self-incrimination protects any person from being compelled to speak against his penal interest. See *Malloy v. Hogan,* 378 U.S. 1 (1964). The anticipated witnesses for Dvorak are expected to continue to assert their Fifth Amendment privilege during the pendency of the criminal proceeding, and they sure will in the civil case. These issues would become moot if the civil action was stayed during the pendency of the criminal proceeding and would promote efficiency and avoid duplication.

15

**F. A Stay Would Serve Public Interest and Harm No One**

"[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *State Farm Lloyds,* 2006 WL 3691115 at * 3, citing *Javier H.,* 218 F .R.D. at *75. A stay in this case would allow the criminal action to proceed unimpeded by any concerns that may arise in discovery in the civil case.

Where the issues are similar in both the civil and criminal cases, judicial efficiency would be furthered by a stay, and no public nor private interest will be harmed by staying the civil action. See *Adelphia,* 2003 WL 22358819 at *5. While the public has an interest in this case, the public has a far greater interest in the criminal case. The related criminal action serves to advance many of those same interests, especially given the significant overlap of issues. The criminal case, moreover, will be tried, not resolved by Summary Judgments here and there. This factor weighs in favor a granting a stay so there will be a trial.

Since the civil case still, nearly three years after filing, has no trial date, and huge judgments have been rendered against most of the defendants already, and Dvorak is the only one seeking a stay, the public interest would not be harmed or impeded at all by the stay. Indeed, we submit that the public interest is advanced by letting the criminal case run its course without interference from this case.

**III. CONCLUSION**

All the *Keating* factors support defendant's motion, and the Court should grant defendant Dvorak's motion and stay the civil matter until the resolution of criminal case

over the same facts. No interest of anyone or anybody is harmed by granting a stay.

It is logical and compelling to grant the stay.[6]

Respectfully submitted,

/s/ *John Wesley Hall, Jr.*

JOHN WESLEY HALL, JR.
  Nev. Bar No. 05012
  Ark. Bar No. 73047
1202 Main Street; Suite 210
Little Rock, Arkansas 72202-5057
(501) 371-9131 / fax (501) 378-0888
e-mail:  ForHall@aol.com

*Attorney for Defendant Dvorak*

CERTIFICATE OF SERVICE

I certify that this document was e-filed and will be electronically served by the Clerk on the parties to this case.

/s/ *John Wesley Hall, Jr.*
John Wesley Hall, Jr.

---

[6] If the court denies the stay, Dvorak still seeks leave to file a response to the Motion for Summary Judgment.

17